UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO,
LOCAL UNION No. 369,   Plaintiff/Counter Defendant,

v.   Civil Action No. 3:19-cv-430-DJH-RSE

ADT, LLC,   Defendant/Counter Claimant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

ADT terminated Charles Meeler from his job after it determined that he had exceeded his allowable number of absences from work in a year. (Docket No. 19-4, PageID # 384-85)  Pursuant to the parties' collective bargaining agreement, the Union representing Meeler filed a grievance on his behalf, but ADT rejected the claim. (*Id.*, PageID # 385)  The grievance moved to arbitration, where the arbitrator sustained the grievance in favor of the Union and ordered ADT to reinstate Meeler with backpay. (*Id.*, PageID # 393)  The Union filed this action to enforce that award, and ADT counterclaimed to vacate the award. (*See* D.N. 1; D.N. 8)  ADT and the Union then filed cross-motions for summary judgment as to whether the arbitrator properly interpreted the CBA. (*See* D.N. 19; D.N. 21)  For the reasons explained below, the Court will grant the Union's motion and deny ADT's motion.

**I.**

Charles Meeler worked as a service technician for ADT in Louisville, Kentucky. (D.N. 19-1, PageID # 131)  As a member of the union that represents ADT employees, International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 369, Meeler was subject to the provisions of the collective bargaining agreement between ADT and the Union. (*Id.*)  In 2018,

1

Meeler had accumulated several absences according to Schedule C of the CBA (the "Attendance Policy"). (D.N. 19-4, PageID # 384) By May 2018, Meeler had enough absences under the Attendance Policy to subject him to termination.[1] (*Id.*) At that time, ADT decided not to terminate Meeler. (*Id.*) On July 17, 2018, Meeler left his job half an hour early after vomiting multiple times. (*Id.*, PageID # 391) Meeler's supervisor informed him that this would constitute half an absence under the Attendance Policy, which would bring him to twelve absences. (*Id.*, PageID # 391-92) Meeler returned to work until ADT temporarily suspended him on August 10, 2018. (*Id.*, PageID # 385) Ultimately, ADT terminated Meeler for his absences on August 17, 2018. (*Id.*)

The Attendance Policy outlines the possible consequences for excessive absences. (D.N. 19-5, PageID # 413-14) It begins with a policy objective that states: "The Company requires good attendance and punctuality on the part of its Associates. However, we realize that circumstances beyond the Associate's control may cause absences from work and/or lateness. It is the responsibility of both the Associate and the supervisor to minimize absences and lateness." (*Id.*, PageID # 413)

ADT uses a progressive discipline system consisting of discretionary and mandatory punishments for each additional incident. (*Id.*, PageID # 413-14) Under the Attendance Policy, the first five absences do not count as incidents. (*Id.*, PageID # 413) An employee's sixth absence constitutes the first incident, and each subsequent absence is an additional incident. (*Id.*) A partial incident is "defined as coming in late or leaving before the end of the employee's scheduled day without a valid excuse and without management approval." (*Id.*) Two partial incidents count as one incident. (*Id.*) The third and fourth incidents result in warnings from management. (*Id.*,

---

[1] The Union disputes ADT's calculation of Meeler's absences, but the arbitrator did not address this issue because he ruled for the Union on other grounds. (D.N. 19-4, PageID # 389-90)

PageID # 413-14)  After the fifth incident (ten absences), the manager has the discretion to suspend the employee, and the sixth incident (eleven absences) subjects the employee to "further disciplinary action, up to and including termination." (*Id.*, PageID # 414)

After reviewing the CBA and the Attendance Policy, the arbitrator concluded that "the Company did not have 'just cause' to terminate [Meeler] (or, alternatively, did not act 'reasonably' or 'fairly' in terminating him)."  (D.N. 19-4, PageID # 393)  In reaching this conclusion, the arbitrator considered whether ADT should have excused Meeler's partial incident on July 17. (*Id.*, PageID # 392)  Even though Meeler had a valid excuse—he was ill—this was counted as a "partial incident" because management did not give Meeler approval to leave early. (*Id.*)  Citing the policy objective, the arbitrator found that it was unreasonable for ADT to withhold management approval and count the July 17 absence as an incident. (*Id.*)

The arbitrator considered the Attendance Policy in light of Article 1, Section 2 of the CBA, which states in relevant part:

> The operation of the Employer's business and the direction of the working force including, but not limited to, the making and enforcement of reasonable rules and regulations relating to the operation of the Employer's business, the establishment of reporting time, the right to hire, transfer, lay off, promote, demote, discharge for cause, assign or discipline employees . . . is vested exclusively in the Employer, subject, however, to the provisions of this Agreement.

(D.N. 19-5, PageID # 397-98)  The arbitrator interpreted this provision to require that ADT act reasonably when enforcing its Attendance Policy. (D.N. 19-4, PageID # 393)  The arbitrator concluded that ADT failed to abide by the reasonableness requirement when it withheld management approval for Meeler to leave work half an hour early due to illness. (*Id.*)  Further, the arbitrator found that ADT failed to act reasonably by terminating Meeler under the Attendance Policy under these circumstances. (*Id.*)  As a remedy, the arbitrator ordered ADT to reinstate

3

Meeler with backpay. (*Id.*) ADT asks the Court to vacate this award (D.N. 19), while the Union argues that the award should be enforced. (D.N. 21)

**II.**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

"The standard of review for cross-motions [for] summary judgment does not differ from the standard applied when only one party files a motion." *Stevens v. CSX Transp., Inc.*, No. 17-74-HRW, 2018 WL 4686428, at *3 (E.D. Ky. Sept. 28, 2018) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Id.* (quoting *Taft Broad. Co.*, 929 F.2d at 248). "Thus, when the court reviews cross-

motions for summary judgment, it 'must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party.'" *Id.* (quoting *Taft Broad. Co.*, 929 F.2d at 248).

### A.  Review of Arbitration Awards

"Federal labor arbitration case law is shaped largely by the strong congressional policy encouraging the resolution of labor disputes through arbitration procedures selected by the parties." *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Loc. 890L*, 656 F.3d 368, 371 (6th Cir. 2011). The Court affords great deference to an arbitrator's award and examines such awards using a standard that screens for "procedural aberration[s]." *Mich. Fam. Res., Inc. v. Serv. Emp. Int'l Union Loc. 517M*, 475 F.3d 746, 752-53 (6th Cir. 2007) (en banc). To determine whether an award has procedural aberrations, the Court asks three questions:

> [1] Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? [2] Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And [3] in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Id.* at 753. Only the third question is at issue here. (D.N. 19-1, PageID # 138; D.N. 23, PageID # 598) So "'long as the arbitrator is even arguably construing or applying the contract,' [the Court] will uphold the decision." *Zeon Chems., L.P. v. United Food & Com. Workers, Loc. 72D*, 949 F.3d 980, 983 (6th Cir. 2020) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). The Court's "task is not to choose the best interpretation" of the CBA, but rather to determine whether the arbitrator arguably construed the CBA. *Id.* "This view of the 'arguably construing' inquiry . . . respects the parties' decision to hire their own judge to resolve their disputes . . . ." *Mich. Fam. Res.*, 475 F.3d at 753.

An arbitrator arguably construes the contract when the award bears all the "hallmarks of interpretation." *Zeon Chems.*, 949 F.3d at 983 (quoting *Mich. Fam. Res.*, 475 F.3d at 754). An award bears the "hallmarks of interpretation" when the arbitrator "refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does [the arbitrator] say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Mich. Fam. Res.*, 475 F.3d at 754. The Court will enforce an award where the arbitrator's interpretation is plausible, even if the "merits analysis has some eyesores." *Zeon Chems.*, 949 F.3d at 983. On the other hand, arguably the arbitrator fails to construe the contract when "the arbitrator's decision on the merits was so untethered from the agreement that it casts doubt on whether he was engaged in interpretation, as opposed to the implementation of his 'own brand of industrial justice.'" *Titan Tire Corp. of Bryan*, 656 F.3d at 374 (quoting *Mich. Fam. Res.*, 475 F.3d at 754).

The Sixth Circuit recently upheld an award where the arbitrator interpreted a just-cause provision alongside an attendance points system similar to those at issue in this case. *Zeon Chems.*, 949 F.3d at 983. The court observed that the arbitrator set out the relevant facts and provisions of the CBA and explained how each party interpreted the agreement, then analyzed the provisions of the CBA and applied his interpretation to the parties' dispute. *Id.* The Sixth Circuit found that this analysis bore all the "hallmarks of interpretation," noting that it appeared the arbitrator had "engaged in 'good-faith interpretation of the contract.'" *Id.*

Further, the arbitrator's interpretation in *Zeon Chemicals* was not "so untethered" from the CBA as to justify vacating the award. *Id.* at 983-84. According to the arbitrator, the just-cause provision required "more than a mechanical application" of the attendance policy. *Id.* at 983. Instead, the company needed to consider the surrounding circumstances to establish that "it had a

6

reasonable basis to terminate the employee." *Id.* Because this was a plausible interpretation of the CBA, the award satisfied the requirement that the arbitrator construe the contract. *Id.*

B.      **Arbitrator's Interpretation of the CBA**

Here, as in *Zeon Chemicals*, the arbitrator satisfied the "arguably construing" standard when he considered ADT's application of the Attendance Policy in light of the requirements of the CBA. The arbitrator set out the facts and the provisions of the CBA that he viewed as relevant to the dispute between the parties. (D.N. 19-4, PageID # 383-89) He interpreted the policy objective and Article 1, Section 2 to require ADT to act reasonably when terminating an employee pursuant to the Attendance Policy. (*Id.*, PageID # 392-93) When applying this interpretation of the CBA to the events leading to Meeler's termination, the arbitrator concluded that ADT acted unreasonably by firing Meeler for leaving work early when he was sick. (*Id.*) Because the arbitrator set out the relevant provisions of the CBA, analyzed the meaning of those provisions, and applied this construction of the CBA to Meeler's termination, the award bears all the "hallmarks of interpretation." *Zeon Chems.*, 949 F.3d at 983. As in *Zeon Chemicals*, nothing here suggests that the arbitrator was doing anything other than "trying to reach a good-faith interpretation of the contract." 949 F.3d at 983 (quoting *Mich. Fam. Res.*, 475 F.3d at 754).

Nor is the arbitrator's reading "so untethered" from the CBA that it casts doubt on whether the arbitrator arguably construed the CBA. *Mich. Fam. Res.*, 475 F.3d at 753. The arbitrator's interpretation that the reasonableness requirement modifies the Attendance Policy is not materially different from the interpretation upheld by the Sixth Circuit in *Zeon Chemicals*. *See* 949 F.3d at 983. Because the arbitrator reached a plausible interpretation of the CBA, the arbitrator arguably construed the CBA. *See id.*

7

According to ADT, the arbitrator's analysis should have ended after the arbitrator found that ADT was within its rights to terminate Meeler. (D.N. 22, PageID, # 592) By conducting a reasonableness analysis, ADT argues, the arbitrator went beyond the CBA and the Attendance Policy and inserted new terms. (*Id.*) But this argument misconstrues the arbitrator's conclusion. The arbitrator acknowledged that "[b]ased solely on the CBA, and a *strict* interpretation of the Attendance Policy, the Company was well within its rights in deciding to terminate" Meeler. (D.N. 19-4, PageID # 391 (emphasis added)) The arbitrator went on to conclude, however, that such a strict reading was not appropriate in light of the policy objective and the reasonableness language in Article 1, Section 2 of the CBA. (D.N. 19-4, PageID # 392-393) Both of these views are plausible interpretations of the CBA. An arbitrator arguably fails to construe the contract only where the interpretation is so untethered from the CBA that it casts doubt on whether the arbitrator was actually interpreting the CBA. *Zeon Chems.*, 949 F.3d at 983 (citing *Mich. Fam. Res.*, 475 F.3d at 754). Here, the arbitrator quoted the relevant provisions of the CBA, explained how Article 1, Section 2 and the policy objective modified the Attendance Policy, and applied this construction of the CBA to Meeler's grievance. (D.N. 19-4, PageID # 391-93) Since the arbitrator engaged in a plausible interpretation of the contract, the Court will not vacate the award. *Mich. Fam. Res.*, 475 F.3d at 754 (finding that an award bears the "hallmarks of interpretation" where the arbitrator "refers to, quotes from and analyzes the pertinent provisions of the agreement").

ADT further argues that the Attendance Policy satisfies the reasonableness standard the arbitrator identified in Article 1, Section 2 because both parties agreed to the Attendance Policy. (D.N. 22, PageID # 593) Even if this were true, it would still be possible for the arbitrator to conclude—as he did—that ADT failed to exercise the discretion granted by the Attendance Policy in a reasonable manner. (D.N. 19-4, PageID # 393) Additionally, this argument incorrectly

suggests that the Court should engage in a merits analysis of the arbitrator's reasonableness conclusion. The Court's "task is not to choose the best interpretation" of the CBA, but rather to determine whether the arbitrator's arguably construed the CBA. *Zeon Chems.*, 949 F.3d at 983. Here, as discussed above, the arbitrator arguably construed the CBA, and therefore it is not relevant that there may have been alternative interpretations. ADT's final argument, that it is reasonable to expect employees to maintain extra points for unforeseen circumstances (D.N. 22, PageID # 594), fails for the same reason.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     The Union's cross-motion for summary judgment (D.N. 21) is **GRANTED**. A separate judgment will be entered this date.

(2)     ADT's motion for summary judgment (D.N. 19) is **DENIED**.